UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THERESA SCHULTZ　　　　　　＊ | |
| ＊ | CIVIL ACTION NO.: 20-cv-02830 |
| *Plaintiff,*　　　　　　　　＊ | |
| ＊ | DISTRICT JUDGE: |
| VERSUS　　　　　　　　　　＊ | LANCE M. AFRICK |
| ＊ | |
| ROUSE'S ENTERPRISES, L.L.C.　＊ | MAGISTRATE JUDGE: |
| ＊ | MICHAEL B. NORTH |
| *Defendant.*　　　　　　　　＊ | |
| ＊ | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO STRIKE SECOND REPORT OF DR. LACY H. SAPP, PH.D.

**MAY IT PLEASE THE COURT:**

Defendant, Rouse's Enterprises, L.L.C. ("Rouses"), respectfully submits the following memorandum in support of its Motion to Strike Second Report of Dr. Lacy H. Sapp, Ph.D. This matter is currently scheduled for a jury trial to commence on the 6th day of July, 2021.

**I.　FACTUAL AND PROCEDURAL BACKGROUND**

On December 30, 2019, Theresa Schultz was working as an independent contractor of International Wine and Spirits, Inc. ("International"). As part of her duties, Ms. Schultz was required to travel to several grocery stores on her route to ensure that International's products—craft and specialty beer—were adequately stocked and displayed for customers to view and purchase.[1] Around noon that day, Ms. Schultz arrived at Rouses Market #31 located at 50 Park Place Drive, Covington, Louisiana to stock and front her products.[2] According to the complaint, Ms. Schultz' access to the top shelf was blocked by "several Rouse's displays."[3] "Schultz

---

[1] R. Doc. 1, p. 2.
[2] R. Doc. 1, p. 2.
[3] R. Doc. 1, p. 2.

1

attempted to reach the shelf she needed to access, but due to the store displays, that was virtually impossible. As she reached around the displays for the merchandise she needed, she lost her balance and fell to the floor."[4]

On October 16, 2020, the Plaintiff instituted this action.[5] Within her complaint, the Plaintiff specifically alleged that her pre-existing complex regional pain syndrome (CRPS) had travelled to her right upper extremity based upon the injuries she sustained on December 30, 2019.[6] On January 5, 2021, the parties participated in a status conference to select a trial date, as well as all other necessary pre-trial deadlines. During that January 5, 2021 scheduling conference, the parties were informed that the Plaintiff's expert disclosure deadline was March 5, 2021, the Defendant's expert disclosure deadline was April 2, 2021, and all discovery, including depositions for trial use, would be completed by April 19, 2021. Following this scheduling conference, this Court issued a scheduling order, which confirmed these deadlines.[7] In particular, this scheduling order required the disclosure of all expert reports "as defined by Federal Rule of Civil Procedure 26(a)(2)(B), who may be witnesses for Plaintiffs fully setting forth all matters about which they will testify and the basis therefor shall be obtained and delivered to counsel for Defendant as soon as possible, but in no event later than Thursday, March 4, 2021."[8] Furthermore, this scheduling order specifically advised parties that the "Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown."[9]

---

[4] R. Doc. 1, p. 2.
[5] R. Doc. 1.
[6] R. Doc. 1, p. 3.
[7] R. Doc. 8.
[8] R. Doc. 8, p. 2.
[9] R. Doc. 8, pp. 2-3.

a. **The First Report of Dr. Sapp**

On March 2, 2021, the Plaintiff produced the first report of Dr. Lacy H. Sapp, Ph.D., a copy of which is attached as Exhibit "A." That report began by noting that Dr. Sapp had reviewed certain medical records, consulted with the Plaintiff's orthopedist, and interviewed the Plaintiff on February 8, 2021. However, despite her review of these records and her interview of the Plaintiff, Dr. Sapp stated in her report that she did "not have enough information to formulate a life care plan in this matter."[10]

Relevant to this motion is Dr. Sapp's review of the medical records of the Plaintiff's pain management doctor, Dr. C. Ann Conn, M.D. Dr. Sapp reviewed Dr. Conn's notes and charts for the Plaintiff from 12/17/19 though 01/21/21, and Dr. Sapp specifically noted within her summary of these records that Dr. Conn had "discussed the possibility of a spinal cord stimulator with Ms. Schultz" on August 20, 2020. Dr. Sapp also noted that on October 15, 2020, "Dr. Conn discussed the spinal cord stimulator if the injections did not help," and another reference to Dr. Conn's recommendation of a spinal cord stimulator is again noted during a November 11, 2020 visit.[11] Finally, Dr. Sapp's summary of the Plaintiff's January 21, 2021 visit with Dr. Conn again noted that Dr. Conn had "recommended a neuropsychological evaluation" and "discussed a spinal cord stimulator trial with Ms. Schultz."[12] Despite these repeated references and recommendations for a spinal cord stimulator to treat the Plaintiff's complex regional pain syndrome, Dr. Sapp did not offer any opinions regarding the potential costs of such treatment within her first report. Although her first report indicates that she was unable to consult with Dr. Conn in advance of the expert

---

[10] Exhibit A, p. 6.
[11] Exhibit A, pp. 5-6.
[12] Exhibit A, p. 6.

3

disclosure deadline, her own review of the medical confirms that Ms. Schultz was being recommended this same therapy.

    b. **The Second Report of Dr. Sapp**

On March 18, 2021, the Plaintiff produced the second report of Dr. Sapp, and a copy of that second report is enclosed as Exhibit "B." This second report was produced following the deadline for the Plaintiff's expert disclosures, and the Plaintiff did not seek leave of court to extend that disclosure deadline or otherwise move for leave to supplement Dr. Sapp's report in advance of producing this second report. Although styled as a "supplemental" report to the March 2, 2021 report, Dr. Sapp's second report contains entirely new opinions that were not included within her original report. Dr. Sapp's second report provides the following information with respect to the estimated costs for a psychological evaluation, primary care physician clearance, spinal cord stimulator trial, and implantation of spinal cord stimulator:

***SPINAL CORD STIMULATOR & ASSOCIATED COSTS:***

| Service or Item | Purpose | Duration | Frequency | Total Costs/Unit Costs | Comments |
|---|---|---|---|---|---|
| Psychological Evaluation | Pre-operative | Life expectancy | Once | $93.67-$110.00* | Per Dr. Conn. These costs are based on $187.33-$220.00 for the total evaluation cost. |
| PCP Clearance | Pre-Operative | Life expectancy | Once | $75.00-$250.00* | Per Dr. Conn. These costs are based on $150.00-$500.00 for the total PCP clearance. |
| SCS Trial | Pain Management | Life expectancy | Once | $36,550.00* | Per Dr. Conn. The spinal cord stimulator trial has been recommended to treat both the right and left side. 50% of the costs are included for the right. These costs are based on a total of These costs are based on $73,100.00 for the full trial. |

| Service or Item | Purpose | Duration | Frequency | Total Costs/Unit Costs | Comments |
|---|---|---|---|---|---|
| SCS Implant | Pain Management | Life expectancy | Once | $100,842.50* | Per Dr. Conn. The spinal cord stimulator has been recommended to treat both the right and left side. 50% of the costs are included for the right. These costs are based on a total of $201,685.00 for the full implantation. |

*One-time only or short-term cost

**Subtotals for Spinal Cord Stimulator & Associated Costs:
Total Costs: $137,561.17 - $137,752.50**

On March 25, 2021, counsel for the parties conferred via e-mail regarding the issues outlined within this motion. In particular, the undersigned requested that counsel for the Plaintiff withdraw Dr. Sapp's second report as it was produced in violation of scheduling order, and that document was not considered a true "supplemental" report. In response to this request, counsel for the Plaintiff indicated that same day that the second report would not be withdrawn.[13] On March 26, 2021, Rouses noticed the deposition of Dr. Sapp for April 13, 2021.[14] Because this deposition was scheduled less than thirty-days prior to the date of the deposition, Rouses will incur a $2,600 rush charge for this deposition if this second report is not stricken by April 8, 2021.[15]

## II.    LAW AND ARGUMENT

Federal Rule of Civil Procedure 26(a)(2) governs the issuance of reports by experts. In this case, Dr. Sapp qualifies as a witness who must provide a written report because she was retained or specially employed to provide expert testimony in the case. From the moment she initiated this lawsuit, the Plaintiff has had ample time to consult with Dr. Sapp and ensure she was able to issue a report in time to comply with the Scheduling Order. Instead, Plaintiffs chose to ignore the clear deadlines set forth in the Scheduling Order by producing Dr. Sapp's second expert report fifteen

---

[13] See enclosed March 25, 2021 emails, attached in globo as Exhibit "C."
[14] A copy of this notice of deposition is enclosed as Exhibit "D."
[15] *See* March 24, 2021 correspondence from Stokes and Associates confirming April 13, 2021 date, enclosed as Exhibit "E."

days prior to Defendant's expert disclosure deadline. Although the Plaintiff and Dr. Sapp both styled the March 18, 2021 report as "supplemental"; in reality, this is the first report by Dr. Sapp in which she offers any opinions regarding the Plaintiff's life-care planning needs. As such, Rouses has been prejudiced by the production of this second report.

Not only was this report produced in violation of the scheduling order, but the new opinions contained therein have required Rouses to incur significant costs by scheduling this expert's deposition on a "rush" basis to satisfy the Court's discovery deadline. This second report is not a "supplemental" report as that term is understood in the context of Rule 26; Dr. Sapp's first report failed to satisfy the specific requirements of Rule 26(a)(2) such that there was no original report to supplement in the first place.[16] Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure requires that the parties submit expert reports "at the times and in the sequence directed by the Court." Rule 16 of the Federal Rules of Civil Procedure provides this Court with the authority to establish a scheduling order governing the sequence and timing of discovery. This Court did enter such a scheduling order.

Rule 16(f) authorizes a district court to sanction a party that fails to obey the Court's Scheduling Order. Moreover, Rule 37(c)(1) provides that "If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that

---

[16] Federal Rule of Civil Procedure (a)(2) provides in part
    (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
        (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
        (ii) the facts or data considered by the witness in forming them;
        (iii) any exhibits that will be used to summarize or support them;
        (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
        (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
        (vi) a statement of the compensation to be paid for the study and testimony in the case.

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Indeed, this Court has previously noted that a "[f]ailure to comply with the deadline for disclosure requirements may very well result in mandatory and automatic exclusion under Rule 37(c)(1) . . . . unless the failure was substantially justified or is harmless." *Causey v. State Farm Mut. Auto Ins. Co.*, 2018 U.S. Dist. LEXIS 82388, *2 (E.D. La. 05/16/18) (Africk, J.) (internal quotations omitted). In this case, the Plaintiff's efforts to circumvent the Court's scheduling order through the challenged "supplemental" report is neither substantially justified nor harmless.

A. **Dr. Sapp's Initial Report is Devoid of any Expert Opinions**

Dr. Sapp's March 2, 2021 report does not offer a single expert opinion. This report contains a factual narrative of the Plaintiff's background, as well as a summary of the medicals received, but nowhere within this report does Dr. Sapp issue any expert opinion as required by Rule 26(a)(2)(B)(i). Since the report does not contain any expert opinions, the report also does not contain the basis of the opinions, and the facts or data considered by the witness in forming the absent opinions as required by Rule 26(a)(2)(B)(ii). This report also fails to include (1) a list of the witness's qualification, including a list of all publications authored within the past ten years; (2) a listing of all other cases Dr. Sapp has testified as an expert within the last four years; and (3) a statement of the compensation for Dr. Sapp's work in this matter. Fed. R. Civ. P. 26(a)(2)(B)(iv)-(vi). The lack of any expert opinions within the original report, coupled with the failure to adhere to the other requirements set forth in Rule 26(a)(2)(B), warrants the conclusion that no expert disclosure by the Plaintiff occurred within the time-delays set by the scheduling order. *See Harmon v. Ga. Gulf Lake Charles L.L.C.* 476 Fed. Appx. 31, 36 (5th Cir. 2012) (Finding no abuse of discretion in trial court's finding that a party's initial expert disclosures were insufficient for failing

to comply with Rule 26(a)(2)(B)); *see also Sanchez v. Swift Transp. Co. of Arizona, LLC*, 2017 U.S. Dist. LEXIS 101410 (W.D. Tex. 06/29/17) (Guirola, J.) ("Plaintiffs cannot fulfill their disclosure obligations by providing sketchy, vague or incomplete reports with no expert opinions.").

Finally, because this first report is not a proper expert disclosure, Dr. Sapp's second report cannot be considered a "supplement" to that March 2, 2021 document. *Harmon*, 476 Fed. Appx. at 36 (affirming decision to strike an expert's self-styled "supplemental" report as untimely for violation of scheduling order); s*ee also Sanchez*, 2017 U.S. Dist. LEXIS 101410 ("[P]roviding untimely expert reports labeled as 'supplemental' is insufficient.").

B. **Dr. Sapp's Second Report is not "Supplemental" and is untimely**

Federal Rule of Civil Procedure 26(e) requires parties to supplement previous disclosures if they learn that such disclosures are incorrect or incomplete. This duty extends to information included in expert reports and given during expert depositions. Fed. R. Civ. P. 26(e)(2). However, "[s]upplemental disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Williams v. Am. Strategic Ins. Corp.*, 2014 U.S. Dist. LEXIS 39346 (Africk, J.) (quoting *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)). Initial expert disclosures must be "full and complete." *Bean Meridian, L.L.C. v. Suzuki Motor Corp. (In re. C.F. Bean L.L.C.)*, 841 F.3d 365, 371 (5th Cir. 2016) (quoting S.D. Miss. Civ. R. 26(a)(2)). "The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998)

In this case, Dr. Sapp's March 18, 2021 report did not "supplement" her earlier report as there were no opinions within the first report to supplement. Just as with her original report, Dr. Sapp's second report fails to include "the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case." Furthermore, the fact that Dr. Sapp was unable to schedule a consultation with the Plaintiff's treating pain management doctor in advance of the expert disclosure deadline does not excuse the Plaintiff's efforts to intentionally circumvent this Court's scheduling order.

This action was filed in October 2020, and the Plaintiff had nearly four months from the time she instituted this action to ensure that her expert reports were sufficient under the Federal Rules, yet she failed to do so. In addition, despite the availability of the Plaintiff's pain management doctor notes following this incident, Dr. Sapp nevertheless failed to offer any opinions regarding the estimated costs of these spinal cord stimulator treatments. Nothing prevented Dr. Sapp from conducting a "survey of medical providers, durable equipment distributors, pharmacies, surgery centers, etc., and ask for the 'billed price' the patient would be expected to cover should they independently seek the services without the benefit of any discount."[17] In fact, despite specifically noting that she would "supplement" her first report, Dr. Sapp made no effort to provide estimated costs for these procedures in the first instance. Instead, Dr. Sapp simply refused to offer any opinions regarding the life-care planning needs of the Plaintiff and submitted a placeholder report devoid of substance. Thus, because there were no "opinions"

---

[17] *See "Life Care Plan Methodology, the Price is Right, or is it?,"* Stokes and Associates, located at https://www.stokes-associates.com/blog/2019/1/2/life-care-plan-methodology-the-price-is-right-or-is-it (last accessed March 29, 2021). A copy of this blog post, which includes Dr. Sapp's name at the bottom of the entry, is enclosed a Exhibit "F."

that Dr. Sapp would testify to contained within her first report, there are no opinions to supplement, and Dr. Sapp's second report is therefore an untimely expert disclosure as that document was produced following the Plaintiff's expert disclosure deadline.

## C. **Courts in this Circuit Routinely Exclude Expert Testimony where the Expert failed to Timely Submit an Expert Report**

In *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 379-381 (5th Cir. 1996), the Court of Appeal upheld the district court's exclusion of a party's expert witnesses for failure to comply with the district court's scheduling order, including failing to timely submit an expert witness report. In examining the district court's exclusion of the expert witness testimony, the Court of Appeal stated: "When a district court excludes expert testimony as a sanction for a violation of a discovery order, we determine whether the court's action is an abuse of discretion by examining four factors:

(1) the explanation, if any, for the party's failure to comply with the discovery order;

(2) the prejudice to the opposing party of allowing the witnesses to testify;

(3) the possibility of curing such prejudice by granting a continuance; and

(4) the importance of the witnesses' testimony."

*Id.* at 380.

The *Barrett* factors have been routinely applied throughout this Circuit when determining whether a party's failure to comply with a discovery order should result in the exclusion of a witness's testimony. For example, in *Metro Ford Truck Sales Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) (superseded by statute on other grounds), the Court of Appeal held that the district court did not abuse its discretion in denying the plaintiff's motion for leave to file an untimely expert report. The expert failed to submit his report prior to the deadline established by the district court's scheduling order, but the expert did submit a report prior to the subsequent

deadline for supplemental disclosures set by the scheduling order. On appeal, plaintiff argued that filing the expert report late should have been sufficient. The Fifth Circuit rejected the plaintiff's argument, holding that the district court's decision was not an abuse of discretion. The Court considered the Barrett factors, and held that the plaintiff failed to provide sufficient justification for its failure to comply with the district court's scheduling order. *Id*. at 324. Similarly, in *Beasley v. U.S. Welding Service, Inc*., 129 Fed. Appx. 901, 902 (5th Cir. 2005) the Fifth Circuit held that the district court did not abuse its discretion in excluding the plaintiff's liability expert where the plaintiff failed to submit the expert report prior to the deadline established by the district court's scheduling order.

First, the Plaintiff is unable to offer any adequate explanation that would excuse her intentional efforts to circumvent this Court's scheduling order or her failure to comply with the disclosure requirements of Rule 26. Dr. Sapp's original report was produced two days prior to the Plaintiff's disclosure deadline, and that document specifically noted that Dr. Sapp would "amend [her] report **if allowed**" following her consultation with Dr. Conn. Yet the Plaintiff did not seek leave of court to extend her expert disclosure deadline or otherwise seek leave to supplement this original report. Additionally, nothing prevented Dr. Sapp from offering opinions regarding the estimated costs of the spinal cord stimulator treatments based upon her initial review of Dr. Conn's medical records for the Plaintiff. These failures weigh in favor of exclusion. *See GE Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 U.S. Dist. LEXIS 30713 (W.D. Tex. 10/8/2004) ("Because defendants formulated a new expert report on damages and then failed to request leave of this Court to modify the scheduling order to supplement Dr. Dillman's report, this Court finds grounds for its exclusion from admission as evidence. In short, because defendants

failed to request leave of Court to modify the scheduling order deadline for submission of expert reports, they failed to show good cause for such modification.").

Second, Rouses has been prejudiced by the production of this second report. As noted above, Rouses will now incur "rush" costs to take the deposition of Dr. Sapp due to the untimely expert report that was produced approximately one month prior to the close of discovery, and Rouses' motions practice and trial preparations have been disrupted due to the untimely expert report at issue for this motion. Rouses attempted to resolve this issue without court-intervention when it requested the Plaintiff withdraw Dr. Sapp's second report; however, the Plaintiff refused to do so. The Fifth Circuit has also noted that, with respect to potential prejudice, a delay of even a few weeks in disclosing expert testimony disrupts a court's schedule and the opponent's preparation and is thus prejudicial. *Geiserman v. MacDonald*, at 893 F.2d 787, 791 (5th Cir. 1990); *Williams v. Gonzales*, 2005 U.S. Dist. LEXIS 38838, 2005 WL 3447885, at *6 (E.D. Tex. 2005)("Disruption of the court's discovery schedule and the opponent's preparation constitutes sufficient prejudice to militate in favor of the exclusion of [expert] testimony"); *see also Williams v. Am. Strategic Ins. Corp.*, 2014 U.S. Dist. LEXIS 39346, *12 (03/25/14) (Africk, J.) ("Courts have found that prejudice occurs when additional reports are filed after the deadlines for such disclosures have passed). Therefore, this second factor likewise weighs in favor of exclusion.

Third, although Rouses is not requesting a continuance of the trial in this matter, that fact does not weigh against its request to exclude Dr. Sapp's second report. This Court has previously noted in similar circumstances that a "continuance . . . would reward [plaintiff's] dilatory behavior, or possibly gamesmanship, and is not warranted. [T]o grant a continuance would effectively countenance [plaintiff's] failure to comply with the scheduling order [or consult with opposing

counsel], which is behavior this Court is not eager to encourage." *Williams*, 2014 U.S. Dist. LEXIS 39346 at*13 (Africk, J.) (internal citations omitted).

Finally, the fourth factor—the importance of the testimony—likewise weighs in favor of exclusion. The only opinions offered by Dr. Sapp within her second report detail the estimated costs for the spinal cord stimulator treatment that the Plaintiff's pain management doctor is recommending. According to the second report, these costs were obtained directly from the Plaintiff's pain management doctor; therefore, an exclusion of this report would not prevent the Plaintiff from otherwise seeking to introduce testimony regarding those costs into evidence at trial as Dr. Conn will be available to testify. Thus, "[t]his is far removed from a situation where exclusion of the report would be 'tantamount to dismissal of [a] claim,' thereby making this factor an overriding consideration." *Williams*, 2014 U.S. Dist. LEXIS 39346 at*10 (Africk, J.) (citing *EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 117 (5th Cir. 1993)). Therefore, this fourth factor likewise weighs in favor of exclusion.

D. **Request for Attorney's Fees**

Under Rule 37(c)(1), the Court may impose other appropriate sanctions "in addition to or instead of" of striking the expert "unless the failure was substantially justified or is harmless." In advance of its preparation of this motion, Rouses attempted to resolve these issues absent court-intervention when it requested the Plaintiff withdraw Dr. Sapp's second report; however, the Plaintiff refused to do so. Considering the Plaintiff's intentional efforts to circumvent this Court's scheduling order and her refusal to voluntarily withdraw the second report, Rouses' respectfully submits that an order requiring the Plaintiff to pay Rouses' reasonable attorneys' fees incurred in conjunction with this motion is appropriate in addition to an order striking the second report.

III. **CONCLUSION**

For the foregoing reasons, Rouse's Enterprises, L.L.C. respectfully requests that this Court issue an order striking the second report of Dr. Lacy Sapp in this matter as that disclosure was made in violation of the Court's scheduling order, and the Plaintiff's production of this untimely report is neither substantially justified nor harmless. Furthermore, Rouse's Enterprises, L.L.C. respectfully prays for an award of "reasonable expenses incurred in making the motion, including attorney's fees" after affording the Plaintiff an opportunity to be heard. Fed. R. Civ. P. 37(a)(5)(A).

**Respectfully submitted,**

**COTTEN SCHMIDT, L.L.P.**

**/s/ Cody J. Acosta**
**LAWRENCE E. ABBOTT #02276**
**PAUL M. LAVELLE #08692**
**CHRISTINE C. BRUNEAU #25366**
**CODY J. ACOSTA #37005**
**650 Poydras St., Suite 1950**
**New Orleans, Louisiana 70130**
**Telephone: (504) 568-9393**
**Fax: (504) 524-1933**
*Attorneys for Rouse's Enterprises, L.L.C.*

Dated: March 29, 2021