UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THERESA SCHULTZ * | |
| * | CIVIL ACTION NO.: 20-cv-02830 |
| *Plaintiff,* * | |
| * | DISTRICT JUDGE: |
| VERSUS * | LANCE M. AFRICK |
| * | |
| ROUSE'S ENTERPRISES, L.L.C. * | MAGISTRATE JUDGE: |
| * | MICHAEL B. NORTH |
| *Defendant.* * | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## STATEMENT OF FACTS NOT GENUINELY IN DISPUTE

1. On December 30, 2019, the Plaintiff, Ms. Theresa Schultz, was working as an independent contractor of International Wine and Spirits, Inc. ("International").

2. As part of her duties, Ms. Schultz was required to travel to several grocery stores on her route to place orders for International's products and to ensure those products were adequately displayed for customers to view and purchase.

3. At approximately 11:45 a.m., Ms. Schultz arrived at Rouses Market #31 located at 50 Park Place Drive, Covington, Louisiana to place orders and front her products.[1]

4. Prior to Ms. Schultz's arrival on 12/30/19, Rouses' store director, Mr. Keith Moulliet, had completed a visual inspection of the entire store to "assure that all floor and display areas are free of any hazard" at 11:04 a.m., and he completed an additional inspection of the entire store one hour later at approximately 12:12 p.m. Additionally, at 11:19 a.m., a member of Rouses' floor care team completed another visual inspection of the entire store premises.[2]

---

[1] Exhibit A, Deposition, p. 83, ll. 2-4.
[2] Exhibit E, Declaration of Keith Moulliet at ¶ 9.

5. In particular, Ms. Schultz was required to front certain products located on the top-shelf of Rouses' beer section.[3]

6. If Rouses' employees are unable to reach products located on the top shelf of a grocery aisle for stocking purposes, the employee is required to obtain a step-ladder, or some other assistive device, to safely extend his or her reach.[4]

7. It is Rouses' policy that no person, including customers, employees and vendors, is allowed to step or climb upon the grocery aisle shelving.[5]

8. The shelves situated on Rouses Market #31's premises, including the shelving of the beer aisle, are not designed to be stepped or climbed upon; instead, the surface area of the shelf is designed to allow customers, and Rouses' employees, to easily pull products to the front.[6]

9. In fact, the surface of this shelf is metallic with very little friction, which allows Rouses' employees and vendors to easily front and stock products by pushing them forwards or backwards on the surface of the shelf with very little resistance.[7]

10. Ms. Schultz slipped and fell as she reached up to front her products located on the top-shelf.[8]

11. According to Ms. Schultz, it would have taken her an extra ten to fifteen minutes to locate a step-ladder to help her reach the top-shelf.[9]

12. Prior to this fall, Ms. Schultz did not ask to borrow a step-ladder from Rouses.[10]

---

[3] Exhibit B, Recorded telephone call at 10:40-11:02.
[4] Exhibit E, Declaration of Keith Moulliet at ¶7.
[5] Exhibit E, Declaration of Keith Moulliet at ¶12.
[6] Exhibit E, Declaration of Keith Moulliet at ¶13.
[7] Exhibit E, Declaration of Keith Moulliet at ¶14.
[8] Exhibit A, Deposition, p. 114, ll. 12-14.
[9] Exhibit B, Recorded telephone call at 11:10-11:30.
[10] Exhibit E, Declaration of Keith Moulliet at ¶8.

13. Ms. Schultz does not know what substance she slipped on,[11] or even if her feet were on the ground, or "in the air," immediately prior to her fall.[12]

14. Ms. Schultz does not know which of her feet slipped and caused her to fall.[13]

15. Ms. Schultz does not know what caused one of her feet to slip and fall; instead, during her deposition, Ms. Schultz speculated that she had slipped on "the floor, probably."[14]

16. Ms. Schultz previously speculated that she may have slipped and fallen on water.[15]

17. During her fall, Ms. Schultz's body did not make contact with any floor displays that were placed in the space in front of her products.[16]

18. Prior to this incident on 12/30/19, Rouses had not received a single complaint or claim of injury arising out of the placement of floor displays in front of the hot beer aisle at this location.[17]

19. Ms. Schultz is unable to put forward any evidence that would indicate her fall was caused by any particular condition that existed on Rouses' premises.[18]

20. Following her fall, Ms. Schultz did not look at the ground after she fell to determine whether there were any foreign substances on the ground nor did she examine the surface of the bottom shelf where she had placed her right foot.[19]

21. The beer section grocery shelves' sole use is to display products for sale to Rouses' customers.[20]

22. The beer section grocery shelves are not designed, or intended, to be stepped or climbed upon.[21]

---

[11] *C.f.* Exhibit A, deposition, p. 115, 8-12; 121, ll. 1-7.
[12] Exhibit A, Deposition, p. 115, ll. 1-3.
[13] Exhibit A, Deposition, p. 115, ll. 6-16; p. 121, ll. 1-7.
[14] Exhibit A, Deposition, p. 115, ll. 22-23.
[15] Exhibit A, Deposition, p. 121, ll. 1-7.
[16] Exhibit A, Deposition, p. 95, ll. 16-19.
[17] Exhibit E, Declaration of Keith Moulliet at ¶18.
[18] Exhibit A, Deposition, p. 115, ll. 8-12.
[19] Exhibit A, Deposition, p. 115, ll. 6-16.
[20] Exhibit E, Declaration of Keith Moulliet at ¶13.
[21] Exhibit E, Declaration of Keith Moulliet at ¶13.

23. On January 2, 2021, Ms. Schultz followed-up on these injuries with her orthopedist, Dr. Blane Sessions of Louisiana Hand to Shoulder Center, LLC. During this visit, Ms. Schultz provided the following HPI (history of present illness) information:

> This is a 64 year old female who is right hand dominant and comes in for a chief complaint of Arm Pain, involving the right arm. This occurred in the context of slipping and falling on 01/30/2019 [sic] (**Pt slipped and fell stepping on bottom shelf of grocery store. Pt Stated she is a grocery store distributor. Pt stated she slipped and fell onto her R side with arm extended**.)[22]

24. On the same date as her initial visit with Dr. Sessions, Ms. Schultz returned to Rouses Market #31. At that time, Mr. Moulliet met with her to prepare incident reports for this fall.[23]

25. As she was unable to write due to her injuries, Mr. Moulliet filled out the Customer Incident Report based upon Ms. Schultz's statements to him at that time.[24]

26. In particular, Ms. Schultz informed Mr. Moulliet that she was "reaching up top shelf to [front] product, standing on bottom shelf. Slipped fell landing on right hand."[25]

27. Furthermore, she informed Mr. Moulliet that the accident had taken place on "Aisle 18 in front of hot beer section," and that there were no witnesses to this accident.[26]

28. After filling out the Customer Incident Report on behalf of Ms. Schultz, Mr. Moulliet handed her the document to sign, which she did.[27]

29. Mr. Moulliet also prepared a "Manager's Accident Report" based upon his conversation with her on January 2, 2020. According to that report, Ms. Schultz told Mr. Moulliet that she was "reaching up to top shelf to front up product standing on bottom shelf. Slipped, fell landing on right hand."[28]

---

[22] Exhibit D, Visit Note -January 2, 2020 (HPI) (emphasis added).
[23] Exhibit E, Declaration of Keith Moulliet, at ¶16
[24] Exhibit E Declaration of Keith Moulliet at ¶16
[25] Exhibit E Declaration of Keith Moulliet, Exhibit E-3.
[26] Exhibit E Declaration of Keith Moulliet, Exhibit E-3.
[27] Exhibit E Declaration of Keith Moulliet, Exhibit E-3.
[28] Exhibit E Declaration of Keith Moulliet, Exhibit E-4.

30. After executing these incident reports, Ms. Schultz walked over to the area of her fall and took a photograph of that location, which depicted a floor display situated in front of her shelf-space.[29]



---

[29] Exhibit A, Deposition, p. 91, ll. 15-16. A copy of this photograph is enclosed as Exhibit "F."

31. During her deposition, Ms. Schultz identified the second display from the left-side of the photograph as the display that is referenced within her complaint.[30]

32. Despite being far-sighted and not wearing corrective lenses on the date of loss, Ms. Schultz admitted to seeing the display prior to her fall.[31]

33. This display is an open and obvious condition.[32]

34. Ms. Schultz believes the display is an open and obvious condition.[33]

35. There is no evidence that any floor display on Rouses' premises actually caused Ms. Schultz to fall.

36. There is no evidence Rouses created the display identified by Ms. Schultz in her complaint.

37. There is no evidence Rouses had actual notice of the floor display identified by Ms. Schultz in her complaint prior to her fall.

38. Ms. Schultz does not know how long the display identified in her complaint was on the sale floor prior to her fall.[34]

39. In fact, Ms. Schultz could not say if the display referenced within her complaint was at the store during her visit to the location one week prior to her fall; instead, Ms. Schultz speculated that there would have been another display in its place "[b]ecause they rotate displays out. So I can't confirm that. Most likely it was."[35]

40. There is no evidence that the risk of harm in this case was reasonably foreseeable to Rouses prior to the Plaintiff's reporting of her fall.

---

[30] Exhibit A, Deposition, p. 92, ll. 12-14, 25; p. 93, ll. 1-4. *See also* Exhibit 1 to Plaintiff's deposition transcript.
[31] Exhibit A, Deposition, p. 26, ll. 11-13; p. 92, ll. 18-19; Deposition, p. 97, ll. 5-7.
[32] Exhibit A, Deposition, p. 26, ll. 11-13; 92, ll. 18-19; p. 96, ll. 14-23; p. 97, ll. 5-7; p. 101, ll. 5-10.
[33] Exhibit A, Deposition, p. 101, ll. 5-10
[34] Exhibit A, Deposition, p. 92, ll. 20-22.
[35] Exhibit A, Deposition, p. 93, ll. 4-9.

41. On or about February 19, 2020, Ms. Schultz received a telephone call from Ms. Julie Henderson, claims specialist for Rouse's Enterprises, L.L.C. Ms. Henderson was returning Ms. Schultz's call after receiving a voicemail about Rouses' claims process, and the entirety of this telephone call was recorded by Ms. Henderson.[36]

42. During this telephone call, Ms. Schultz specifically referenced the HPI information contained within Dr. Sessions' January 2, 2020 note, and indicated that the statements attributed to her within that January 2, 2020 HPI note were taken "word for word."[37]

43. Ms. Schultz is unable to put forth any evidence that any condition on Rouses' premises on 12/30/19 presented an unreasonable risk of harm and that caused her to fall.

44. Ms. Schultz is unable to put forth any evidence that would suggest any harm was reasonably foreseeable to Rouses prior to her fall on 12/30/19.

45. Ms. Schultz is unable to put forth any evidence that would suggest Rouses either created or had actual or constructive notice of the condition which caused her damage, prior to the occurrence.

46. Ms. Schultz is unable to put forth any evidence that would suggest Rouses failed to exercise reasonable care prior to her fall.

---

[36] Exhibit G, Declaration of Julie Henderson, at 5.
[37] Exhibit B, Recorded telephone call at 9:40-10:20.

        **Respectfully submitted,**

        **COTTEN SCHMIDT, L.L.P.**

        **/s/ Cody J. Acosta**
        **LAWRENCE E. ABBOTT   #02276**
        **CODY J. ACOSTA            #37005**
        **650 Poydras St., Suite 1950**
        **New Orleans, Louisiana  70130**
        **Telephone: (504) 568-9393**
        **Fax: (504) 524-1933**
        *Attorneys for Rouse's Enterprises, L.L.C.*

Dated: May 4, 2021